# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| NOU SAYAVONG, | ) | 1:10-cv-01724 LJO GSA |
| | ) | |
| Plaintiff, | ) | **FINDINGS AND RECOMMENDATIONS** |
| | ) | **REGARDING PLAINTIFF'S SOCIAL** |
| v. | ) | **SECURITY COMPLAINT** |
| | ) | |
| MICHAEL ASTRUE, Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

## BACKGROUND

Plaintiff Nou Sayavong ("Plaintiff") seeks judicial review of a final decision of the

Commissioner of Social Security ("Commissioner" or "Defendant") denying her applications for

disability insurance and supplemental security income benefits pursuant to Titles II and XVI of

the Social Security Act.  The matter is currently before the Court on the parties' briefs, which

were submitted, without oral argument, to Magistrate Judge Gary S. Austin, for findings and

recommendations to the District Court.

//

//

1

## FACTS AND PRIOR PROCEEDINGS[1]

Plaintiff filed applications for benefits in July 2007, alleging disability as of January 1, 2005.  AR 74-78.  Plaintiff's applications were denied initially and on reconsideration, and she requested a hearing before an Administrative Law Judge ("ALJ").  AR 42-53.  ALJ Christopher Larsen held a hearing and subsequently issued an order denying benefits on September 4, 2009, finding Plaintiff was not disabled.  AR 16-23.  On July 20, 2010, the Appeals Council denied review.  AR 5-7.

### Hearing Testimony

ALJ Larsen held a hearing on June 1, 2009, in Fresno, California.  Plaintiff appeared and testified; she was assisted by attorney Gina Fazio and an interpreter.  Chansy Sayavong also testified.  AR 309-326.

### *Plaintiff's Testimony*

Plaintiff was born on February 10, 1948.  AR 313.  She lives with her husband and one of her three daughters.  AR 315-316.  The family moved to California from North Carolina in 2006.  AR 320-321.  Plaintiff has not received a formal education.  When she came to the United States, she took an English class but she understands only a few words.  AR 313-314.  Plaintiff does not know how tall she is, nor how much she weighs.  AR 320.

As of January 1, 2005, Plaintiff's pain became disabling.  She feels pain in her back, shoulders and hip all the time.  Her back is very painful and "pop[s] all the time."  AR 320.  Her entire body is in pain and she has difficulty sleeping.  AR 314.  Without medication, Plaintiff will sleep one or two hours a night.  With medication, she sleeps about three to four hours.  AR 314.

Plaintiff also worries about her husband as he has had seven or eight strokes; she worries about losing him.  AR 314-315.  When she was asked whether she does anything to help her husband in light of his condition, Plaintiff indicated she cannot help her husband as a result of

---

[1]References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

her own pain.  AR 315.  Despite receiving therapy once a month, the pain persists.  Rather, Plaintiff's daughters care for their father.  AR 315.

When she was asked whether she was receiving mental health treatment, Plaintiff replied, "I don't know.  They say me go, I go.  I don't know where I go."  AR 315.

Plaintiff no longer drives; her daughters provide transportation.  While she does not recall how long ago she stopped driving, Plaintiff indicated she no longer drives as a result of an eye condition and because she is "scared."  AR 315-316.  When asked what she was afraid of, Plaintiff replied that she becomes frightened when others honk their horn or "pass fast."  AR 316.

A typical day finds Plaintiff resting and lying down, taking medications, then eventually trying to go to sleep.  AR 316.  Initially Plaintiff indicated she did not do any cooking, but then indicated she can do a "little bit but [] cannot finish it" due to pain and dizziness.  AR 317, 320. She does not vacuum because it causes back pain.  AR 317.  Plaintiff does go out with her daughter when it is time to do the laundry.  AR 317.

When she was asked whether she watched television, Plaintiff replied that she tries to watch, but if it is loud she will get a headache.  Therefore, she can only watch for about ten to fifteen minutes at a time throughout the day.  AR 318.  She cannot watch for a longer period of time because she will get dizzy.  AR 318.  She does not listen to the radio or visit with friends. Plaintiff used to go to church, but stopped doing so when her husband's condition worsened in November.  AR 318.

Plaintiff used to work assembling cell phones for seven years.  Prior to that, she worked as a janitor at a school for about four years.  AR 319.  She can no longer perform either of those jobs due to her back pain.  AR 320.

### *Chansy Sayavong's Testimony*

Chansy Sayavong, a stay at home mom, was twenty-nine years old at the time of the hearing.  AR 321-322.  She does not live with her mother, but sees her about three or four times a

3

week while her own children are in school.  AR 322.  Her twin sister lives with her parents, along with her sister's one-year-old daughter; her older sister lives elsewhere.  AR 322, 324.

Chansy has seen her mother's stress and heard her complain about chronic pain, her father's condition, and having "no Medi-CAL to go to the doctor."  AR 322-323.  Her mother cannot stay still, and must be reminded about "[w]hatever she's doing."  AR 323.  Chansy helps her mother around the house and has been doing so since they moved to Fresno.  AR 323.

With particular regard to her father, Chansy indicated he has had eight strokes, two recently.  He was on life support and nearly died.  AR 323-324.  Her twin sister cares for their father.  When asked whether her sister bathed their father, Chansy replied, "[s]he does everything."  AR 324-325.  Chansy's sister also cares for her mother and her own daughter.  AR 325.

**Medical Record**

The entire medical record was reviewed by the Court.  AR 131-308.  The medical evidence will be referenced below as necessary to this Court's decision.

**ALJ's Findings**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard.  AR 16-23.

More particularly, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 1, 2005.  AR 18.  Further, the ALJ identified a depressive disorder as a severe impairment.  AR 18.  Nonetheless, the ALJ determined that the severity of the Plaintiff's impairment or combination of impairments did not meet or exceed any of the listed impairments.  AR 19.

Based on his review of the entire record, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform the full range of work at all exertional levels, yet is limited to simple, repetitive tasks.  AR 19-22.

4

1   Next, the ALJ determined that Plaintiff can perform her past relevant work as a cell

2  phone assembler and school janitor.  AR 22-23.  Thus, he concluded Plaintiff was not disabled.

3  AR 23.

4   **SCOPE OF REVIEW**

5   Congress has provided a limited scope of judicial review of the Commissioner's decision

6  to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations,

7  this Court must determine whether the decision of the Commissioner is supported by substantial

8  evidence.  42 U.S.C. § 405 (g).  Substantial evidence means "more than a mere scintilla,"

9  *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v.*

10  *Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a

11  reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at

12  401.  The record as a whole must be considered, weighing both the evidence that supports and

13  the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler,* 760 F.2d 993,

14  995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must

15  apply the proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).

16  This Court must uphold the Commissioner's determination that the claimant is not disabled if the

17  Secretary applied the proper legal standards, and if the Commissioner's findings are supported by

18  substantial evidence.  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th

19  Cir. 1987).

20   **REVIEW**

21   In order to qualify for benefits, a claimant must establish that he is unable to engage in

22  substantial gainful activity due to a medically determinable physical or mental impairment which

23  has lasted or can be expected to last for a continuous period of not less than twelve months.  42

24  U.S.C. § 1382c (a)(3)(A).  A claimant must show that he has a physical or mental impairment of

25  such severity that he is not only unable to do her previous work, but cannot, considering his age,

26  education, and work experience, engage in any other kind of substantial gainful work which

27

28   5

1  exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

2  The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th

3  Cir. 1990).

4      Here, Plaintiff argues that the ALJ failed to (1) properly evaluate her testimony; (2) assess

5  her mental RFC; (3) re-contact her mental health providers; and (4) call a Vocational Expert

6  ("VE") to testify at the administrative hearing.

7                              **DISCUSSION**[2]

8      *The ALJ's Credibility Findings*

9      Plaintiff argues that the ALJ failed to properly evaluate her testimony because he did not

10  provide clear and convincing reasons for rejecting that testimony.  (Doc. 15 at 8-10.)  The

11  Commissioner counters that the ALJ's credibility assessment was proper and is supported by

12  substantial evidence.  (Doc. 17 at 8-11.)

13      A two step analysis applies at the administrative level when considering a claimant's

14  subjective symptom testimony. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). First, the

15  claimant must produce objective medical evidence of an impairment that could reasonably be

16  expected to produce some degree of the symptom or pain alleged. *Id*. at 1281-1282.  If the

17  claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the

18  claimant's testimony regarding the severity of his symptoms only if he makes specific findings

19  that include clear and convincing reasons for doing so. *Id*. at 1281.  The ALJ must "state which

20  testimony is not credible and what evidence suggests the complaints are not credible." *Mersman*

21  *v. Halter*, 161 F.Supp.2d 1078, 1086 (N.D. Cal. 2001), internal quotations & citations omitted

22  ("The lack of specific, clear, and convincing reasons why Plaintiff's testimony is not credible

23  renders it impossible for [the] Court to determine whether the ALJ's conclusion is supported by

24

25      [2] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including
26  arguments, points and authorities, declarations, and/or exhibits.  Any omission of a reference to any specific
    argument or brief is not to be construed that the Court did not consider the argument or brief.

27

28                              6

1  substantial evidence"); Social Security Ruling ("SSR") 96-7p (ALJ's decision "must be

2  sufficiently specific to make clear to the individual and to any subsequent reviewers the weight

3  the adjudicator gave to the individual's statements and reasons for that weight").

4       An ALJ can consider many factors when assessing the claimant's credibility.  *See Light v.*

5  *Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).  The ALJ can consider the claimant's

6  reputation for truthfulness, prior inconsistent statements concerning his symptoms, other

7  testimony by the claimant that appears less than candid, unexplained or inadequately explained

8  failure to seek treatment, failure to follow a prescribed course of treatment, claimant's daily

9  activities, claimant's work record, or the observations of treating and examining physicians.

10  *Smolen*, 80 F.3d at 1284; *Orn v. Astrue*, 495 F.3d 625, 638 (2007).  "An ALJ is not 'required to

11  believe every allegation of disabling pain' or other non-exertional impairment."  *Orn v. Astrue*,

12  495 F.3d at 635, citation omitted.

13       The first step in assessing Plaintiff's subjective complaints is to determine whether

14  Plaintiff's condition could reasonably be expected to produce the pain or other symptoms

15  alleged.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).  Here, the ALJ found that

16  Plaintiff's medically determinable impairments could reasonably be expected to produce her

17  alleged symptoms.  There is no evidence of malingering.  AR 21.  This finding satisfied step one

18  of the credibility analysis.  *Smolen*, 80 F.3d at 1281-1282.

19       "Despite the inability to measure and describe it, pain can have real and severe

20  debilitating effects; it is, without a doubt, capable of entirely precluding a claimant from

21  working."  *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989).  It is possible to suffer disabling

22  pain even where the degree of pain is unsupported by objective medical findings.  *Id*.  "In order

23  to disbelieve a claim of excess pain, an ALJ must make specific findings justifying that

24  decision."  *Id*., citing *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).  The findings

25  must convincingly justify the ALJ's rejection of the plaintiff's excess pain testimony.  *Id*. at 602.

26  However, an ALJ cannot be required to believe every allegation of disabling pain.  "This holds

27

28         7

1   true even where the claimant introduces medical evidence showing that he has an ailment

2   reasonably expected to produce some pain." *Id*. at 603.

3          ALJ Larsen made the following findings in this case:

[Ms. Sayavong's] statements about the intensity, persistence, and limiting effects of [her] symptoms are not credible to the extent they are inconsistent with my assessment of her residual functional capacity.

Ms. Sayavong testified she has multiple physical and mental symptoms and said she does minimal household chores. She also unambiguously stated, contrary to the overwhelming medical evidence [] discussed above, that only her daughter takes care of her husband and "does everything for him," including bathing. Ms. Sayavong's daughter provided similar testimony and stated her sister cares for Ms. Sayavong's husband.

However, the medical evidence of record discussed above repeatedly reflects Ms. Sayavong was the sole caregiver for her husband, and she was admittedly able to perform some household chores. There is no indication in the records that she is limited in performing any activities due to a mental or physical impairment. Her only limitation is the burden of having to care for her husband 24 hours a day and not having time for other activities.

Ms. Sayavong also submitted a Function Report indicating she does nothing but sit around the house or lie down, and sometimes watch television. She stated her daughter takes care of her husband, including cooking, giving him his medications, bathing him, and taking him to his doctor appointments. She denied problems with her own personal care, but said she needed reminders to bathe and brush her teeth. She denied doing any household chores, cooking, shopping, etc. She indicated problems with most physical and mental abilities, but failed to quantify or explain how her impairments "affect[ed]" those areas. I give these statements little weight since they are vague, [not] quantified, and not substantiated by the medical record.

In sum, my assessment of Ms. Sayavong's residual functional capacity is supported by the overall objective medical evidence of record for the reasons discussed above. Ms. Sayavong's credibility is diminished by her contradictory statements regarding the care of her husband. The medical evidence of record reflects Ms. Sayavong was able to care for her husband 24 hours a day, 7 days a week; therefore, she is clearly capable of performing full-time work within the residual functional capacity provided above. It appears Ms. Sayavong feels entitled to benefits after her long work history so that she can stay home and care for her ill husband. While this is understandable, the Regulations require a finding of disability in order to be entitled to benefits. In this case, there is simply no evidence to show Ms. Sayavong is disabled.

23   AR 21-22, internal citations omitted.

24          ALJ Larsen provided the following reasons for concluding Plaintiff's subjective symptom

25   testimony was less than credible: it was inconsistent with the medical record as a whole; Plaintiff

26   had provided inconsistent statements with regard to the care of her ill husband; and, she told a

8

1    medical care provider that she feels entitled to benefits after working for a long time.  The ALJ

2    clearly identified what testimony he found not credible and what evidence undermined Plaintiff's

3    complaints.  *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1995).  Furthermore, the reasons

4    provided are acceptable.  *See, e.g., Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)

5    (inconsistencies between the record and medical evidence supports a rejection of a claimant's

6    credibility); *Smolen v. Chater*, 80 F.3d at 1284 (prior inconsistent statements & observation of

7    treating or examining physician properly considered).

8        This Court's own review of the record reveals a record replete with references to Plaintiff

9    providing her husband's daily care. *See, e.g.,* AR 177 ("has to care for her sick husband"), 179,

10   181 (not much to do at home other than caring for sick husband), 184 ("she's by herself in caring

11   for her sick husband . . . daughters were not helping"), 185 ("left alone to care not only for

12   herself but for her husband"), 187 ("usually stays at home caring for her husband"), 190 ("she has

13   to take care of her husband 24 hours a day"), 194 ("daughters are now trying their best to help out

14   when she's not home"), 195 (responsible for caring for her husband "24 hours a day"), 197 ("she

15   takes on most of the household tasks and care of her husband"), 201 ("said she had to take

16   [husband] for bathing, changing clothes, cooks for him" & "responsible 100% for the care of her

17   husband" because he "does not want anybody other than" she to help), 203 (husband paralyzed;

18   "needs total care, bathing, feeding, dressing, and directions").  Those statements are plainly

19   inconsistent with Plaintiff's assertions that her daughter or daughters provide for her husband's

20   care. *Cf.* AR 105, 315, 324-325; *but see* AR 116 (daughter "helps me cook and clean") & AR

21   125 (same), 204 (daughter is caretaker "but she's still helping him out").

22       In sum, this Court finds that ALJ Larsen's credibility findings convincingly justify his

23   rejection of Plaintiff's testimony.  *Fair v. Bowen*, 885 F.2d at 602.  Therefore, his findings are

24   supported by substantial evidence and are free of legal error

25       In this portion of her brief, Plaintiff also asserts her GAF scores support a finding of

26   disability.  (Doc. 15 at 9-10.)  The Global Assessment of Functioning or "GAF" scale reflects a

27

28                                            9

1    clinician's assessment of the individual's overall level of functioning.  *American Psychiatric*

2    *Association, Diagnostic & Statistical Manual of Mental Disorders* 30 (4th ed. 2000) ("DSM

3    IV").  A GAF between 51 and 60 indicates "moderate symptoms (e.g. flat affect and

4    circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or

5    school functioning (e.g. few friends, conflicts with peers or co-workers).  DSM- IV at 34.  A

6    GAF score from 61 to 70 indicates: "Some mild symptoms (e.g., depressed mood and mild

7    insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional

8    truancy, or theft within the household), but generally functioning pretty well, has some

9    meaningful interpersonal relationships."  DSM-IV at 34.  The Commissioner has determined the

10   GAF scale "does not have a direct correlation to the severity requirements in [the Social Security

11   Administration's] mental disorders listings." 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000).

12          Here, ALJ Larsen acknowledged Plaintiff's GAF scores (AR 20-21).  Moreover, an ALJ's

13   failure to reference GAF scores alone does not make an RFC inaccurate.  *Howard v.*

14   *Commissioner*, 276 F.3d 234, 241 (6th Cir. 2002); *see also McFarland v. Astrue*, 288 F. Appx.

15   357, 359 (9th Cir. 2008), citing 65 Fed. Reg. 50,745, 50764–65 (Aug. 21, 2000).  Thus, the ALJ

16   did not err in failing to incorporate Plaintiff's GAF scores into his analysis of her RFC.

17          Finally, Plaintiff also briefly asserts, in a single paragraph without any citation to legal

18   authority, that the ALJ erred "by failing to consider her physical impairments when assessing

19   her" RFC.  (Doc. 15 at 10-11.)  RFC is an assessment of an individual's ability to do sustained

20   work-related physical and mental activities in a work setting on a regular and continuing basis of

21   eight hours a day, for five days a week, or equivalent work schedule.  SSR 96-8p.  The RFC

22   assessment considers only functional limitations and restrictions which result from an

23   individual's medically determinable impairment or combination of impairments.  SSR 96-8p.

24   "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record

25   including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain,

26   that are reasonably attributed to a medically determinable impairment.'"  *Robbins v. Social*

27

28                                                    10

1    *Security Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).  A review of the record in this matter

2    establishes that ALJ Larsen did in fact consider Plaintiff's physical impairments, and the lack of

3    objective medical evidence in support thereof, in assessing her RFC.  *See* AR 18-22.  For but one

4    example of the lack of objective medical evidence here, after an internal medicine evaluation

5    performed by board certified internist Steven Stoltz, M.D., the doctor opined there was no

6    objective evidence of a medical disorder that would limit Plaintiff's work related activities.  In

7    fact, the doctor's examination of Plaintiff's back, upper and lower extremities, and neurological

8    system, revealed findings all within normal limits.  *See* AR 150-155.

9            The ALJ's findings are supported by substantial evidence and are free of legal error.

10           ***The Mental RFC Assessment***

11           Plaintiff argues the ALJ erred because his mental RFC finding "does not reflect any

12   deficit whatsoever in maintaining concentration, persistence, or pace . . .."  (Doc. 15 at 11-13.)

13   The Commissioner replies that the ALJ's assessment was proper and his finding is supported by

14   substantial evidence.  (Doc. 17 at 11-12.)

15           An RFC of "simple, routine, repetitive work" adequately captures "moderate"

16   deficiencies in pace.  *See Stubbs–Danielson v. Astrue*, 539 F.3d 1169, 1173 (9th Cir. 2008).

17   "[A]n ALJ's assessment of a claimant adequately captures restrictions related to concentration,

18   persistence, or pace where the assessment is consistent with restrictions identified in the medical

19   testimony." *Id*. at 1174.  In this case, the ALJ's RFC is consistent with the restrictions set forth in

20   the medical records as indicated by the examining physician and state agency reviewing

21   physicians.  As in *Stubbs–Danielson*, "[t]he ALJ translated [claimant's] condition, including the

22   pace and mental limitations, into the only concrete restrictions available to him . . . [a] restriction

23   to 'simple tasks.'" *Id* .

24           Here, the ALJ considered Plaintiff's mental impairment and found that she did not meet

25   or medically equal the criteria of Title 20 of the Code of Federal Regulations, Part 404, Subpart

26   P, Appendix 1, Section 12.04, Paragraph B, which requires that at least two of the following

27

28                                                          11

1   requirements be met: (1) marked restriction of daily living activities; (2) marked difficulties in

2   maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence,

3   or pace; and (4) repeated episodes of decompensation, each of extended duration.  A "marked

4   limitation" means more than moderate but less than "extreme."   The ALJ found that Plaintiff

5   had mild restriction in activities of daily living; mild difficulties in maintaining social

6   functioning; moderate difficulties in concentration, persistence, or pace; and no episodes of

7   decompensation.  AR 19.  Because Plaintiff does not have at least two marked limitations or one

8   marked limitation and repeated episodes of decompensation, the ALJ determined that she does

9   not meet the "paragraph B" criteria.  AR 19.  In fact, ALJ Larsen expressly stated as follows:

10   "When I assess mental residual functional capacity at step 3 ½, I must go into greater detail,

11   itemizing the functions set forth in paragraph B of the adult mental disorders listing in 12.00 of

12   the Listing of Impairments (SSR 96-8p).  Therefore, my residual functional capacity assessment

13   at step 3 ½ in this case reflects the degree of limitation I have found using the 'paragraph B'

14   criteria at steps 2 and 3."  AR 19.  After detailing the medical record regarding Plaintiff's

15   depressive disorder, the ALJ noted that "[t]he state agency doctors opined Ms. Sayavong could

16   perform simple repetitive tasks.  I give the opinion of the state-agency doctors substantial weight,

17   since it is consistent with the overall medical evidence of record."  AR 20.

18        Based on this Circuit's precedent, the ALJ did not err by finding that Plaintiff was

19   capable of simple, repetitive work.  The ALJ's determination is supported by evidence

20   demonstrating that Plaintiff could perform simple, repetitive tasks.  The state agency physicians

21   indicated that Plaintiff was capable of simple, repetitive tasks.  *See, e.g.,* AR 157-174.  Thus, the

22   ALJ's mental RFC finding is supported by substantial evidence.  *Thomas v. Barnhart*, 278 F.3d

23   947, 957 (9th Cir. 2002) (state agency determination consistent with other evidence in the record

24   constitutes substantial evidence); *see also Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir.

25   1995); *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996).

26

27

28                                                           12

1   ***Contact with Mental Health Providers***

2          Plaintiff contends the ALJ has "forgotten that it is the agency's duty to fully develop the

3   record" and that the ALJ should have re-contacted Plaintiff's treatment providers. (Doc. 15 at

4   14.)  The Commissioner asserts the ALJ was not obligated to re-contact Plaintiff's treatment

5   providers because the record was adequate. (Doc. 17 at 13.)

6          In general, it is the duty of the claimant to prove to the ALJ that she is disabled.  20

7   C.F.R. § 404.1512(a).  To this end, she must bring to the ALJ's attention everything that supports

8   a disability determination, including medical or other evidence relating to the alleged impairment

9   and its effect on her ability to work.  *Id.*  For his part, the ALJ has the responsibility to develop "a

10  complete medical history" and to "make every reasonable effort to help [the plaintiff] get medical

11  reports." 20 C.F.R. § 404.1512(d).   If this information fails to provide a sufficient basis for

12  making a disability determination, or the evidence conflicts to the extent that the ALJ cannot

13  reach a conclusion, he may seek additional evidence from other sources.  20 C.F.R. §§

14  404.1512(e); 404.1527(c)(3); *see also Mayes v. Massanari*, 262 F.3d 963, 968 (9th Cir. 2001).

15         However, the ALJ's obligation to obtain additional evidence is triggered only "when the

16  evidence from the treating medical source is inadequate to make a determination as to the

17  claimant's disability."  *Thomas v. Barnhart*, 278 F.3d at 958; *Tonapetyan v. Halter*, 242 F.3d

18  1144, 1150 (9th Cir. 2001) (holding that ALJs have a duty fully and fairly to develop the record

19  when the evidence is ambiguous or "the record is inadequate" to allow for proper evaluation of

20  the evidence).  When the ALJ finds support in the record adequate to make a determination

21  regarding the claimant's disability, he does not have a duty to contact the doctors." *Bayliss, v.*

22  *Barnhart*, 427 F. 3d 1211, 1217 (9th Cir. 2005).

23         Here, Plaintiff's argument lacks merit.  Contrary to Plaintiff's position, ALJ Larsen

24  conducted a thorough review of the entire record and thereafter made a disability determination

25  which is supported by substantial evidence.  The ALJ's comment about the fact Plaintiff's

26  treating sources had not provided an RFC assessment does not change the end result.  Upon

27

28                                                        13

complete evaluation of the evidence, the ALJ in fact determined that the record was adequate to make a determination.  Under these circumstances, the ALJ had no duty to further develop the record.  Therefore, this finding is based upon substantial evidence and is free of legal error.

### The ALJ's Findings and Steps Four and Five

In her opening brief, Plaintiff contends the ALJ erred by failing to call a VE "to determine the effect" of her impairments on her ability to perform work.  More particularly, she asserts that because she is limited to simple, repetitive work and is illiterate and unable to communicate in English, the ALJ erred by relying upon the Grids.  (Doc. 15 at 14-15.)  The Commissioner asserts that the ALJ was not required to obtain the testimony of a VE in this case because the ALJ initially found that Plaintiff was able to perform her past relevant work.  His finding employing the Grids was an alternate finding.  (Doc. 17 at 13-15.)

A person is not disabled if they are able to perform their past work.  20 C.F.R. § 404.1502(f).  SSR 82-61 provides that there are three possible tests for determining whether or not a claimant retains the capacity to perform her past relevant work.[3]  One of the tests identifies that "where the evidence shows that a claimant retains the RFC to perform the functional demands and job duties of a particular past relevant job as he or she actually performed it, the claimant should be found to be 'not disabled.'"  SSR 82-61.

In this case, ALJ Larsen determined that Plaintiff

has past relevant work as a Cell Phone Assembler and School Janitor.  In comparing Ms. Sayavong's residual functional capacity with the physical and mental demands of this work, I find she can perform it as actually and generally performed.

---

[3] Social Security Rulings are interpretations by the Social Security Administration ("SSA") of the Act. While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law.  The Ninth Circuit has upheld the Secretary's interpretation of the Act embodies in SSR 82-40, which makes express what is implicit in SSR 82-61.  *Quang Van Han v. Bowen*, 882 F.2d at 1457.

AR 22.[4]  Of importance here:  Plaintiff did *not* challenge the ALJ's determination that she was capable of performing her past relevant work in her opening brief.  (*See* Doc. 15.)  Rather, that argument was raised only in her reply brief.  (*See* Doc. 18.)  However, arguments made for the first time in a reply brief are considered waived.  *See Eid v. Alaska Airlines, Inc.*, 621 F.3d 858, 889 (9th Cir. 2010), citing *Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir. 1994) (court reviews issues "argued specifically and distinctly in a party's opening brief"); *Omega Environmental, Inc. v. Gilbarco, Inc.*, 127 F.3d 1157, 1167 (9th Cir.1997).  Thus, this Court will not consider Plaintiff's belated argument for it has been waived.

## **RECOMMENDATION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards.

---

[4]The record includes a Disability Report - Adult prepared by Plaintiff wherein she indicates her last job - held for more than six years - involved inspecting cell phone faces.  Asked to describe the job, Plaintiff stated: "I stand all day long inspecting Cell Phone's faces.  This type of work was through an assembly line.  I also pick up the products and put in the box."  AR 93.  No special tools nor technical knowledge was required, and Plaintiff was not required to write or complete reports, nor supervise others.  AR 93-94.  Seven of the eight-hours were standing, and one half hour each were attributed to either walking or sitting.  No climbing, stooping, kneeling, crouching, crawling, reaching, handling or grasping, nor lifting and carrying any weight was required in the position.  AR 93-94.
Moreover, Plaintiff's past relevant work was a subject at the administrative hearing:

| | |
|---|---|
| Q | Now you used to work, correct? |
| A | Yes. |
| Q | What type of work were you doing? |
| A | I don't know how to call that but, you know, the part for the phone. |
| Q | For the phone? |
| A | Yeah. |
| Q | What did you do? |
| A | I just hit the thing to put in there and they have, you know, the machine and then it go by itself.  I have to pick it up to put in there and then they going to go. |
| Q | How long did you do that job? |
| A | Seven years.  This one is seven years. |
| Q | Okay.  Was that the last job that you had? |
| A | Yes. |

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

| | |
|---|---|
| Q | . . . Did you have another job? |
| A | Yeah.  I do the janitor in school. |
| Q | Okay.  How long did you do that job? |
| A | About four years. |

AR 318-320.

1   Accordingly, the Court RECOMMENDS that Plaintiff's appeal from the administrative decision

2   of the Commissioner of Social Security be DENIED and that JUDGMENT be entered for

3   Defendant Michael J. Astrue and against Plaintiff Nou Sayavong.

4         These findings and recommendations will be submitted to the Honorable Lawrence J.

5   O'Neill pursuant to the provisions of Title 28 of the United States Code section 636(b)(l).

6   Within fifteen (15) days after being served with these findings and recommendations, the parties

7   may file written objections with the Court.  The document should be captioned "Objections to

8   Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file

9   objections within the specified time may waive the right to appeal the District Court's order.

10  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

11

12        IT IS SO ORDERED.

13  **Dated:    January 19, 2012**              _____ **/s/ Gary S. Austin** _____
                                               UNITED STATES MAGISTRATE JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                    16